## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

RICHARD RALPH MARTINEZ,

        Plaintiff,

vs.                                                                    No. CIV 20-0722 JB/LF

MICHELLE L. GRISHAM, MELANIE
MARTINEZ, and ROBERTA COHEN,

        Defendants.

### <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Plaintiff's Complaint for Violation of

Civil Rights Pursuant to 42 U.S.C. 1983, filed July 20, 2020 (Doc. 1)("July Complaint"), and

under 28 U.S.C. § 1915, which governs proceedings in forma pauperis, and rule 12(b)(6) of the

Federal Rules of Civil Procedure.   Plaintiff Richard Ralph Martinez filed an earlier complaint in

the United States District Court for the District of New Mexico on January 16, 2020, <u>see</u> Plaintiff's

Complaint for Violation of Civil Rights, filed January 16, 2020 (Doc. 1 in No. CIV 20-

0051)("January Complaint"), which the Honorable Martha Vázquez, United States District Judge

for the United States District Court for the District of New Mexico, dismissed without prejudice

for lack of subject-matter jurisdiction on March 31, 2020, <u>see</u> Memorandum Opinion and Order of

Dismissal, filed March 31, 2020, <u>Martinez v. New Mexico</u>, 2020 WL 1536111 (Doc. 9 in No. CIV

20-0051).   Martinez appears pro se, and seeks damages pursuant to 42 U.S.C. § 1983 for

constitutional violations arising out of his thirteen-year probationary term, which he asserts should

have been only two years long.   <u>See</u> July Complaint at 3-4.   The primary issues are: (i) whether

<u>Heck v. Humphrey</u>, 512 U.S. 477 (1994)("<u>Heck</u>") bars Martinez' July Complaint, when Martinez

is no longer in custody or on parole; (ii) whether the two-year determinate parole provision of New

Mexico's Parole Act, N.M.S.A. § 31-21-10(D)("NMPA"), or 1977 N.M. Laws ch. 216 § 12(C), applied when Martinez committed his crime; (iii) whether the two-year determinate parole provision applies to Martinez as a felon convicted of first degree murder; and (iv) whether Martinez states a claim upon which relief can be granted.   For the reasons stated below, the Court concludes that: (i) <u>Heck</u> does not bar Martinez' July Complaint, because Martinez is no longer in custody; (ii) the two-year determinate parole provision of 1977 N.M. Laws ch. 216 § 12(C), not the NMPA, was applicable law on December 31, 1979, when Martinez committed his crime; (iii) as an inmate convicted of a capital felony, Martinez was not eligible for the two-year determinate parole period under Chapter 216 § 12(C), but was "required to undergo a minimum period of parole of five years" pursuant to 1977 N.M. Laws, ch. 216 § 12(B); and (iv) Martinez does not state a claim upon which relief may be granted, because Martinez has not plausibly alleged that a thirteen-year period of parole violates his rights under the Eighth, Eleventh, Thirteenth or Fourteenth Amendments to the Constitution of the United States, or violates Chapter 216 § 12(B), N.M.S.A. § 31-21-10(B).

## <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Martinez was convicted by a jury of first-degree murder on May 21, 1980.   <u>See</u> Register of Actions at 1, <u>New Mexico v. Richard R. Martinez</u>, No. D-905-CR-800008346.   Martinez committed the murder "on or about December 31, 1979," July Complaint ¶ 1, at 2, and was sentenced to life in prison on May 22, 1980, <u>see</u> Register of Actions at 1; July Complaint ¶ 1, at 2. Martinez was paroled to his home state of New York on December 21, 2006.   <u>See</u> July Complaint ¶¶ 1-2, at 2.   While on parole, Martinez filed a habeas petition challenging the length of his parole, which he contends should have been only two years under New Mexico law.   <u>See</u> July Complaint ¶ 1, at 2.   Jamshid Askar represented Martinez on his habeas petition.   <u>See</u> July Complaint ¶ 3,

at 2.    Roberta Cohen, New Mexico Interstate Compact Administrator for the New Mexico Department of Corrections, advised Mr. Askar that the "Parole Board considered Martinez to be on parole for the rest of his life, and had no mechanism in place to reevaluate the indeterminate length of Martinez's parole . . . ."    July Complaint ¶ 3, at 2.    During his parole, between 2009 and 2016, Martinez wrote to the Governor of New Mexico and the Parole Chairman, "advising and reminding them that the laws mandate he serve only two years on his indeterminate parole and he should be discharged . . . but, he was ignored and received no response from either individuals." July Complaint ¶¶ 1, 4, at 2.    Martinez's parole ended on January 18, 2019, and the New York Parole Board issued an official discharge certificate on March 6, 2019.    See January Complaint at 2.[1]

Martinez asserts that State law "mandate[s] a parolee serve two years on parole and upon completion of said two years to be mandatorily discharged from said parole period pursuant to [§] 41-17-24, N.M.S.A."    July Complaint ¶ 3, at 3.    Martinez alleges that, because the Defendants failed to respond to his repeated requests to discharge his parole, they caused him to suffer cruel-and-unusual punishment, denied him due process, and subjected him to involuntary servitude. See July Complaint ¶¶ 4-7, at 3; id. ¶ 1, at 4.    The Honorable Laura Fashing, United States Magistrate Judge for the United States District Court for the District of New Mexico, notified

---

[1]The Court determines that the facts that Martinez states in his January Complaint are material and helpful to the Court, and Martinez likely would have included them in his July Complaint had he not believed mistakenly that the New Mexico savings statute would apply in federal court.    See July Complaint at 1; N.M.S.A. § 37-1-14 ("If, after the commencement of an action, the plaintiff fail therein for any cause, except negligence in its prosecution, and a new suit be commenced within six months thereafter, the second suit shall, for the purposes herein contemplated, be deemed a continuation of the first.").

Martinez that:

> The Complaint fails to state a claim upon which relief can be granted because the statute on which Plaintiff relies for relief, 41-17-24, N.M.S.A., was repealed in 1977.   Furthermore, Plaintiff makes conclusory allegations that Defendants violated his rights regarding excessive bail and fines, cruel and unusual punishment, equal protection, discrimination, slavery and involuntary servitude, and due process, but does not state with particularity what each Defendant did to Plaintiff, when the Defendants committed these alleged unspecified actions, or how those actions harmed Plaintiff.   *See Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe County Justice Center*, 492 F.3d 1158, 1163 (10th Cir. 2007)("[T]o state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated.").

Memorandum Opinion and Order Granting Motion to Proceed In Forma Pauperis and Order to Show Cause at 2-3, 2020 U.S. Dist. LEXIS 207903 at *1 (D.N.M.), filed November 5, 2020 (Doc. 6)("Show Cause Order").   Judge Fashing ordered Martinez to show cause why the Court should not dismiss this case for failure to state a claim upon which relief can be granted, ordered Martinez to file an amended complaint, and notified Martinez that failure to timely show cause or file an amended complaint may result in this case's dismissal.   <u>See</u> Show Cause Order at 3.   Martinez did not file an amended complaint or file a response to the Show Cause Order by the November 26, 2020, deadline.   Under 28 U.S.C. § 1915(e)(2)(B)(ii), and rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court sua sponte considers whether it should dismiss Martinez' July Complaint for failure to state a claim upon which relief can be granted.   <u>See</u> 28 U.S.C. § 1915(e); Fed. R. Civ. P. 12.

### <u>LAW REGARDING PRO SE LITIGANTS</u>

When a party proceeds pro se, a court construes his or her pleadings liberally and holds them "to a less stringent standard than [that applied to] formal pleadings drafted by lawyers."   <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1991).   "[I]f the Court can reasonably read the

pleadings to state a valid claim on which [the plaintiff] could prevail, it should do so despite [his] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." Hall v. Bellmon, 935 F.2d at 1110. The Court will not, however, "assume the role of advocate for the pro se litigant." Hall v. Bellmon, 935 F.2d at 1110. "[P]ro se status does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure." Ogden v. San Juan Cnty., 32 F.3d 452, 455 (10th Cir. 1994).

### LAW REGARDING SUA SPONTE DISMISSAL UNDER RULE 12(b)(6)

Rule 12(b)(6) authorizes the court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)("Twombly"). A district court should not dismiss a pro se complaint under rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Fed. R. Civ. P. 12(b)(6). While dismissal under rule 12(b)(6) generally follows a motion to dismiss, a court's sua sponte dismissal of a complaint under rule 12(b)(6) is not an error if it is "'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" Curley v. Perry, 246 F.3d 1278, 1282 (10th Cir. 2001)(quoting Hall v. Bellmon, 935 F.3d 1106, 1110 (10th Cir. 1991)).

### LAW REGARDING 42 U.S.C. § 1983

Section 1983 of Title 42 of the United States Code provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation

of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable . . . .

42 U.S.C. § 1983. Section 1983 creates only the right of action; it does not create any substantive rights; substantive rights must come from the Constitution or from a federal statute.   See Nelson v. Geringer, 295 F.3d 1082, 1097 (10th Cir. 2002)("[S]ection 1983 'did not create any substantive rights, but merely enforce[s] existing constitutional and federal statutory rights . . . .'" (second alteration added by Nelson v. Geringer)(quoting Ellis v. Univ. of Kan. Med. Ctr., 163 F.3d 1186, 1197 (10th Cir. 1998))).   Section 1983 authorizes an injured person to assert a claim for relief against a person who, acting under color of state law, violated the claimant's federally protected rights.   To state a claim upon which relief can be granted under § 1983, a plaintiff must allege: (i) a deprivation of a federal right; and (ii) that the person who deprived the plaintiff of that right acted under color of state law.   See West v. Atkins, 487 U.S. 42, 48 (1988).   The Court has noted:

> [A] plaintiff "must establish (1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a 'person' (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the District of Columbia.

Schaefer v. Las Cruces Pub. Sch. Dist., 716 F.Supp. 2d 1052, 1063 (D.N.M. 2010)(Browning, J.)(second alteration in original)(quoting Martinez v. Martinez, No. CIV 09-0281 JB/KBM, 2010 WL 1608884, at *11 (D.N.M. March 30, 2010)(Browning, J.)).

The Supreme Court of the United States clarified that, in alleging a § 1983 action against a government agent in their individual capacity, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."

Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).    Consequently, there is no respondeat superior

liability under § 1983.    See Ashcroft v. Iqbal, 556 U.S. at 676 ("Because vicarious liability is

inapplicable to Bivens[2] and § 1983 suits, a plaintiff must plead that each Government-official

defendant, through the official's own individual actions, has violated the Constitution."); Bd. of

Cty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997).    Entities cannot be held liable solely on the

basis of the existence of an employer-employee relationship with an alleged tortfeasor. See Monell

v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 689 (1978).    Supervisors can be held

liable only for their own unconstitutional or illegal policies, and not for their employees' tortious

acts.    See Barney v. Pulsipher, 143 F.3d 1299, 1307-08 (10th Cir. 1998).

The United States Court of Appeals for the Tenth Circuit recognizes that non-supervisory

defendants may be liable if they knew or reasonably should have known that their conduct would

lead to the deprivation of a plaintiff's constitutional rights by others, and an unforeseeable

intervening act has not terminated their liability.    See Martinez v. Carson, 697 F.3d 1252, 1255

(10th Cir. 2012); Trask v. Franco, 446 F.3d 1036, 1046 (10th Cir. 2006).    The Tenth Circuit also

recognizes that Ashcroft v. Iqbal limited, but did not eliminate, supervisory liability for

government officials based on an employee's or subordinate's constitutional violations.    See

Garcia v. Casuas, No. CIV 11-0011 JB/RHS, 2011 WL 7444745, at *25-26 (D.N.M. Dec. 8,

---

[2]In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)("Bivens"), the Supreme Court of the United States held that a violation of the Fourth Amendment of the Constitution of the United States "by a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct." 403 U.S. at 389. Thus, in a Bivens action, a plaintiff may seek damages when a federal officer acting in the color of federal authority violates the plaintiff's constitutional rights. See Bivens, 403 U.S. at 389.    See also Ashcroft v. Iqbal, 556 U.S. at 675-76 (stating that Bivens actions are the "federal analog" to § 1983 actions).

2011)(Browning, J.)(citing Dodds v. Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010)).   The

language that may have altered the landscape for supervisory liability in Ashcroft v. Iqbal is:

"Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that

each Government-official defendant, through the official's own individual actions, has violated

the Constitution."   Ashcroft v. Iqbal, 556 U.S. at 676.   The Tenth Circuit in Dodds v. Richardson

stated:

> Whatever else can be said about *Iqbal*, and certainly much can be said, we conclude
> the following basis of § 1983 liability survived it and ultimately resolves this case:
> § 1983 allows a plaintiff to impose liability upon a defendant-supervisor who
> creates, promulgates, implements, or in some other way possesses responsibility
> for the continued operation of a policy the enforcement (by the defendant-
> supervisor or her subordinates) of which "subjects, or causes to be subjected" that
> plaintiff "to the deprivation of any rights . . . secured by the Constitution . . . ."

614 F.3d at 1199 (quoting 42 U.S.C. § 1983).   The Tenth Circuit has noted, however, that "*Iqbal*

may very well have abrogated § 1983 supervisory liability as we previously understood it in this

circuit in ways we do not need to address to resolve this case."   Dodds v. Richardson, 614 F.3d

at 1200.   It concluded that Ashcroft v. Iqbal did not alter "the Supreme Court's previously

enunciated § 1983 causation and personal involvement analysis."   Dodds v. Richardson, 614 F.3d

at 1200. More specifically, the Tenth Circuit recognized that there must be "an 'affirmative' link

. . . between the unconstitutional acts by their subordinates and their 'adoption of any plan or policy

. . . -- express or otherwise -- showing their authorization or approval of such misconduct.'"

Dodds v. Richardson, 614 F.3d at 1200-01 (quoting Rizzo v. Goode, 423 U.S. 362, 371 (1976)).

The specific example that the Tenth Circuit used to illustrate this principle is Rizzo v.

Goode, where the plaintiff sought to hold a mayor, a police commissioner, and other city officials

liable under § 1983 for constitutional violations that unnamed individual police officers

committed.   See Dodds v. Richardson, 614 F.3d at 1200 (quoting Rizzo v. Goode, 423 U.S. at

371).   The Tenth Circuit noted that the Supreme Court in that case found a sufficient link between

the police misconduct and the city officials' conduct, because there was a deliberate plan by some

of the named defendants to "'crush the nascent labor organizations.'"   Dodds v. Richardson, 614

F.3d at 1200 (quoting Rizzo v. Goode, 423 U.S. at 371).

### LAW REGARDING DISMISSING CLAIMS UNDER HECK v. HUMPHREY

In Preiser v. Rodriguez, 411 U.S. 475 (1973), the Supreme Court held that "habeas corpus

is the appropriate remedy for state prisoners attacking the validity of the fact or length of their

confinement . . . ."   Preiser v. Rodriguez, 411 U.S. at 490.   The Supreme Court also held that

habeas corpus is the exclusive remedy for a prisoner who "seeks immediate or speedier release,

even though such a claim may come within the literal terms of § 1983."   Heck v. Humphrey, 512

U.S. at 481 (citing Preiser v. Rodriguez, 411 U.S. at 488-90).   Justice Scalia[3] stated in Heck v.

Humphrey, "We emphasize that Preiser did *not* create an exception to the 'no exhaustion' rule of

§ 1983; it merely held that certain claims by state prisoners are not *cognizable* under that provision,

and must be brought in habeas corpus proceedings, which do contain an exhaustion requirement."

Heck v. Humphrey, 512 U.S. at 481 (emphasis in original).   In Heck v. Humphrey, the Supreme

Court addressed whether a damages claim that calls into question the lawfulness of conviction or

confinement is cognizable under § 1983.   See 512 U.S. at 483 ("The issue with respect to

---

[3]All nine justices voted to affirm, but split on the decision's reasoning.   Justice Scalia
wrote the Supreme Court's majority opinion, in which Chief Justice Rehnquist and Justices
Kennedy, Thomas, and Ginsburg joined.   Justice Thomas, although joining the opinion in full,
concurred separately to note that, in his view, the Supreme Court "put § 1983 and the habeas statute
on what Justice Souter appropriately terms a 'collision course.'"   Heck v. Humphrey, 512 U.S. at
491 (Thomas, J., concurring).   Justice Souter, joined by Justices Blackmun, Stevens, and
O'Connor, concurred in the judgment, but disagreed with the majority's reliance on the common-
law tort of malicious prosecution "instead of analyzing the statutes to determine which should
yield to the other at this intersection."   Heck v. Humphrey, 512 U.S. at 492 (Souter, J., concurring
in judgment).

monetary damages challenging conviction is not, it seems to us, exhaustion; but rather, the same as the issue was with respect to injunctive relief challenging conviction in Preiser: whether the claim is cognizable under § 1983 at all.   We conclude that it is not.").

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.   A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.   Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.   But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

Heck v. Humphrey, 512 U.S. at 486-87 (footnotes omitted)(emphasis in original).

The Supreme Court made it clear that § 1983 does not require a plaintiff to first exhaust state remedies:

> We do not engraft an exhaustion requirement upon § 1983, but rather deny the existence of a cause of action.   Even a prisoner who has fully exhausted available state remedies has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus.

512 U.S. at 489.   Justice Thomas, in a concurring opinion, explained the benefit of using the favorable-termination requirement in §1983 cases:

> It is at this point that the malicious-prosecution tort's favorable-termination requirement becomes helpful, not in dictating the elements of a § 1983 cause of action, but in suggesting a relatively simple way to avoid collisions at the intersection of habeas and § 1983.   A state prisoner may seek federal-court § 1983 damages for unconstitutional conviction or confinement, but only if he has previously established the unlawfulness of his conviction or confinement, as on

appeal or on habeas.   This has the effect of requiring a state prisoner challenging the lawfulness of his confinement to follow habeas's rules before seeking § 1983 damages for unlawful confinement in federal court, and it is ultimately the Court's holding today.

512 U.S. at 498 (Thomas, J., concurring).   He warned, however, that the holding could cause problems for "individuals not 'in custody' for habeas purposes'":

> If these individuals (people who were merely fined, for example, or who have completed short terms of imprisonment, probation, or parole, or who discover (through no fault of their own) a constitutional violation after full expiration of their sentences), like state prisoners, were required to show the prior invalidation of their convictions or sentences in order to obtain § 1983 damages for unconstitutional conviction or imprisonment, the result would be to deny any federal forum for claiming a deprivation of federal rights to those who cannot first obtain a favorable state ruling.   The reason, of course, is that individuals not "in custody" cannot invoke federal habeas jurisdiction, the only statutory mechanism besides § 1983 by which individuals may sue state officials in federal court for violating federal rights. That would be an untoward result.

512 U.S. at 500 (Thomas, J., concurring).

In Wilkinson v. Dotson, 544 U.S. 74 (2005), the Supreme Court reviewed its cases related to when a prisoner in state custody may pursue a § 1983 claim, and when the prisoner must instead seek federal habeas corpus relief or appropriate State relief.   See 544 U.S. at 78 (citing Preiser v. Rodriguez, 411 U.S. 475 (1973); Wolff v. McDonnell, 418 U.S. 539 (1974); Heck v. Humphrey, 512 U.S. 477 (1994); Edwards v. Balisok, 520 U.S. 641 (1997)).

> Throughout the legal journey from Preiser to Balisok, the Court has focused on the need to ensure that state prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement -- either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody. Thus, Preiser found an implied exception to § 1983's coverage where the claim seeks -- not where it simply "relates to" -- "core" habeas corpus relief, i.e., where a state prisoner requests present or future release.   Cf. *post,* at 1253 (Kennedy, J., dissenting)(arguing that Preiser covers challenges that "relate . . . to" the duration of confinement).   Wolff makes clear that § 1983 remains available for procedural challenges where success in the action *would not necessarily* spell immediate or speedier release for the prisoner.   Heck specifies that a prisoner cannot use § 1983

> to obtain damages where success *would necessarily* imply the unlawfulness of a (not previously invalidated) conviction or sentence.   And <u>Balisok</u>, like <u>Wolff</u>, demonstrates that habeas remedies do not displace § 1983 actions where success in the civil rights suit would not necessarily vitiate the legality of (not previously invalidated) state confinement.   These cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation) -- no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) -- *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.

544 U.S. at 81-82 (emphasis in original).   The Supreme Court applied these principles in

<u>Wilkinson v. Dotson</u> to conclude that the plaintiffs, who were challenging the state procedures

used to deny parole eligibility and parole suitability, could bring their § 1983 claims, because

"neither prisoner's claim would necessarily spell speedier release," and, thus, "neither lies at 'the

core of habeas corpus.'"   544 U.S. at 82.

> Success for Dotson does not mean immediate release from confinement or a shorter stay in prison; it means at most new eligibility review, which at most will speed *consideration* of a new parole application.   Success for Johnson means at most a new parole hearing at which Ohio parole authorities may, in their discretion, decline to shorten his prison term.

544 U.S. at 82 (emphasis in original).

One question remaining after <u>Heck v. Humphrey</u> is "whether the <u>Heck</u> doctrine pertains

even when the § 1983 claimant cannot pursue federal habeas corpus because she is not in custody,

either because the claimant had never been incarcerated or because a sentence of incarceration had

expired."   Martin A. Schwartz, <u>Section 1983 Litigation Claims and Defenses</u> § 10.06[F] Section

1983 and Federal Habeas Corpus: Solving Preiser-Heck-Edwards Puzzles at 10-68.4 to -68.5 (4th

ed. 2012-1 Supp.).   In <u>Cohen v. Longshore</u>, 621 F.3d 1311 (10th Cir. 2010), the Tenth Circuit

recognized a circuit split on the issue, but ultimately held that "a petitioner who has no available

remedy in habeas, through no lack of diligence on his part, is not barred by <u>Heck</u> from pursuing a

§ 1983 claim."   <u>Cohen v. Longshore</u>, 621 F.3d at 1317.   In that case, the Tenth Circuit reviewed

de novo the district court's denial of the plaintiff's request for leave to amend his complaint to include a false imprisonment claim; the district court had concluded that the claim "lacked merit because Plaintiff had not invalidated his imprisonment and thus could not recover damages under Heck v. Humphrey."   Cohen v. Longshore, 621 F.3d at 1315.   The plaintiff argued "that Heck should not bar this action because Plaintiff has no available habeas remedy," and the Tenth Circuit acknowledged that he had "in fact sought to invalidate his imprisonment through a 28 U.S.C. § 2241 petition but was prevented by his transfer out of Immigration and Customs Enforcement custody, which mooted his habeas claims."   Cohen v. Longshore, 621 F.3d at 1315.   The Tenth Circuit noted that "[t]he circuits have split on the question of whether the Heck favorable-termination requirement applies when the plaintiff lacks an available habeas remedy," 621 F.3d at 1315, based in part on a footnote in Heck v. Humphrey, in which the Supreme Court stated that "'the principle barring collateral attacks -- a longstanding and deeply rooted feature of both the common law and our own jurisprudence -- is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated,'" 621 F.3d at 1315 (quoting Heck v. Humphrey, 512 U.S. at 490 n.10).   "Based on this dicta and the Court's broad language in its holding, several circuits have held that the Heck favorable-termination requirement prevents § 1983 claims for damages even when brought by petitioners whose release from custody has made habeas relief unavailable."   Cohen v. Longshore, 621 F.3d at 1315 (citing cases from the First, Third, Fifth, and Eighth Circuits).   The Tenth Circuit pointed to other Courts of Appeals that have "reached the opposite conclusion" based on the Supreme Court's decision in Spencer v. Kemna, 523 U.S. 1 (1998).   Cohen v. Longshore, 621 F.3d at 1316 (citing cases from the Second, Fourth, Sixth, Seventh, Ninth, and Eleventh Circuits).

In Spencer, a majority of the Court affirmed the dismissal for mootness of a habeas

- 13 -

claim brought by a petitioner who was no longer in custody because the petitioner had failed to show that he suffered continuing collateral consequences from his parole revocation following his release.   [523 U.S.] at 14-16 . . . .   In a concurrence, four Justices articulated an additional reason why this result was correct -- "a former prisoner, no longer 'in custody,' may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy," and thus "the answer to Spencer's argument that his habeas claim cannot be moot because <u>Heck</u> bars him from relief under § 1983 is that <u>Heck</u> has no such effect."   <u>Id.</u> at 21 . . . (Souter, J., concurring).   Justice Stevens dissented from the majority opinion, concluding that the case should not be moot based on the petitioner's interest in vindicating his reputation.   <u>Id.</u> at 22-25 . . . (Stevens, J., dissenting).   He agreed with the concurring Justices, however, that a petitioner without a remedy under the habeas statute may bring an action under § 1983.   <u>Id.</u> at 25 n.8 . . . .

After discussing the Court's statements in <u>Heck</u> and <u>Spencer</u>, the Fourth Circuit explained that its decision to follow the reasoning of the five-Justice plurality in <u>Spencer</u> was informed by equitable concerns and consideration of the purpose of § 1983.   <u>Wilson[ v. Johnson</u>], 535 F.3d [262,] 268[ (4th Cir. 2008)].   The court noted that the purpose of § 1983 is to "provid[e] litigants with 'a uniquely federal remedy against incursions . . . upon rights secured by the Constitution and laws of the Nation,'" and that "[b]arring [the plaintiff's] claim would leave him without access to any judicial forum in which to seek relief for his alleged wrongful imprisonment."   <u>Id.</u> (quoting <u>Wilson v. Garcia</u>, 471 U.S. 261, 272-73 . . . (1985)[, superseded by 28 U.S.C. § 1658 <u>as stated in</u> Jones v. R.R. Donnelley & Sons Co.</u>, 541 U.S. 369 (2004)]).   The Fourth Circuit then explained that it simply "d[id] not believe that a habeas ineligible former prisoner seeking redress for denial of his most precious right -- freedom -- should be left without access to a federal court."   <u>Id.</u>   Similarly, the Eleventh Circuit reasoned in <u>Harden[ v. Pataki</u>, 320 F.3d 1289 (11th Cir. 2003),] that, "because federal habeas corpus is not available to a person extradited in violation of his or her federally protected rights, even where the extradition itself was illegal, § 1983 must be" available to redress an unconstitutional extradition.   <u>Harden</u>, 320 F.3d at 1299.

<u>Cohen v. Longshore</u>, 621 F.3d at 1316.   Noting that the Supreme Court has not settled the issue, <u>see</u> 621 F.3d at 1316 (citing <u>Muhammad v. Close</u>, 540 U.S. 749, 752 n.2 (2004)(stating that "[m]embers of the Court have expressed the view that unavailability of habeas for other reasons may also dispense with the <u>Heck</u> requirement," but that "[t]his case is no occasion to settle the issue")), the Tenth Circuit stated that, "in light of the fact that <u>Heck</u> involved a petitioner who was

still incarcerated," it was "not persuaded that Heck must be applied to petitioners without a habeas remedy," 621 F.3d at 1316. The Tenth Circuit concluded that "a petitioner who has no available remedy in habeas, through no lack of diligence on his part, is not barred by Heck from pursuing a § 1983 claim," and held that the district court "erred in holding that Plaintiff's false imprisonment claim lacked merit where Plaintiff's prior attempt to obtain a favorable termination in habeas was dismissed based on mootness." 621 F.3d at 1317. See Carbajal v. Hotsenpiller, 524 F. App'x 425, 428 (10th Cir. 2013)(unpublished)("A plaintiff's inability to obtain habeas relief lifts the Heck bar only if that 'inability is not due to the petitioner's own lack of diligence.'"). In Carbajal v. Hotsenpiller, the Tenth Circuit applied the Cohen v. Longshore rule and affirmed a district court's decision to bar the plaintiff's § 1983 claim under Heck. See Carbajal v. Hotsenpiller, 524 F. App'x at 428. Even though the plaintiff was not in custody and thus could not pursue a habeas remedy, the Tenth Circuit "agree[d] with the district court that [the plaintiff's] actions evince a lack of diligence," because "the complaint is clear that Carbajal was aware of the claimed defects in the investigation that led to his convictions in 2000, but only set out to investigate in 2010." Carbajal v. Hotsenpiller, 524 F. App'x at 428.

The Heck bar also applies to proceedings that call into question the fact or duration of parole or probation." Crow v. Penry, 102 F.3d 1086, 1087 (10th Cir. 1996)(per curiam). In Crow v. Penry, the plaintiff brought a suit under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971)("Bivens"),[4] "against his probation officer, the Probation Department of the

_____

[4]The Tenth Circuit stated that the plaintiff "asserted a § 1983 Bivens claim and a pendant state claim for common law abuse of process." 102 F.3d at 1087. It is not clear what the Tenth Circuit meant by "§ 1983 Bivens" claim, because Bivens claims are separate from § 1983 claims, and, as far as the Court can tell, the plaintiff brought claims against only federal defendants, meaning that his claims would properly be under Bivens and not under § 1983. In Bivens, the Supreme Court held that a violation of the Fourth Amendment "by a federal agent acting under

District Court, and the United States Parole Commission," alleging that the defendants violated "his constitutional rights against unreasonable searches or seizures and due process of law." Crow v. Penry, 102 F.3d at 1087. "He sought damages for his arrest as a parole violator and his subsequent incarceration, the revocation of his parole and the ensuring additional period of incarceration." Crow v. Penry, 102 F.3d at 1087. Four months after the district court dismissed the complaint, the plaintiff filed a motion for leave to file an amended complaint, which the district court dismissed "as untimely and unjustified." Crow v. Penry, 102 F.3d at 1087. On appeal, the Tenth Circuit concluded that the plaintiff's

> § 1983 claim is barred by Heck v. Humphrey, . . . which held that to recover damages for an unconstitutional conviction or imprisonment a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by an authorized state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus. Heck applies to Bivens actions. Stephenson v. Reno, 28 F.3d 26 (5th Cir. 1994). It applies to proceedings that call into question the fact or duration of parole or probation. Jackson v. Vannoy, 49 F.3d 175 (5th Cir.), cert. denied, 516 U.S. 851 . . . (1995).

> Crow's claim necessarily implies the invalidity of his parole revocation. He alleges that the probation officer and others conspired to have the search and arrest warrants issued and that the probation officer falsely testified at his probation revocation hearing. The civil claim for damages amounts to a collateral attack on his parole revocation and subsequent incarceration. Heck does not permit this.

Crow v. Penry, 102 F.3d at 1087.

When Heck bars a claim, "the dismissal should be without prejudice." Fottler v. United States, 73 F.3d 1064, 1065 (10th Cir. 1996). See McDow v. Gonzales, No. CIV 07-1266 JB/WPL, 2008 WL 5979833 (D.N.M. Sept. 30, 2008)(Browning, J.)("Although a dismissal under Rule 12(b)(6) for failure to state a claim is generally with prejudice, when a § 1983 claim is

---

color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct." 403 U.S. at 389.

dismissed under <u>Heck</u>, the dismissal is <u>without</u> prejudice." (emphasis in original)), <u>aff'd</u>, 330 F.

App'x 765 (10th Cir. 2009)(unpublished).[5]

## ANALYSIS

Having carefully reviewed the July Complaint and the relevant law, the Court will dismiss

this case for failure to state a claim upon which relief can be granted.   First, <u>Heck</u> does not bar

Martinez' July Complaint because Martinez is no longer in custody and cannot file a habeas corpus

petition.   Second, the two-year determinate parole provision of 1977 N.M. Laws ch. 216 § 12(C)

-- now amended and codified at N.M.S.A.§ 31-21-10(D) -- was applicable law on December 31,

1979, when Martinez committed his crime.   Third, as an inmate convicted of a capital felony,

Martinez was not eligible for the two-year determinate parole period under ch. 216 § 12(C), but

was "required to undergo a minimum period of parole of five years." 1977 N.M. Laws, Ch. 216

§ 12(B).   Finally, Martinez does not state a claim that his thirteen-year parole period violated his

constitutional rights under the Eighth, Eleventh, Thirteenth and Fourteenth Amendments to the

Constitution of the United States of America.   <u>See</u> U.S. Const. amends. VIII, XI, XIII, XIV; July

---

[5]<u>McDow v. Gonzalez</u> is an unpublished opinion, but the Court can rely on an unpublished United States Court of Appeals for the Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it.   <u>See</u> 10th Cir. R. 32.1(A)("Unpublished decisions are not precedential, but may be cited for their persuasive value.").   The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

<u>United States v. Austin</u>, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).   The Court concludes that <u>McDow v. Gonzalez</u>, 330 F. App'x 765 (10th Cir. 2009) and <u>Carbajal v. Hotsenpiller</u>, 524 F. App'x 425 (10th Cir. 2013), have persuasive value with respect to material issues, and will assist the Court in its disposition of this Memorandum Opinion and Order.

Complaint at 3.

## I.     HECK DOES NOT BAR MARTINEZ' CLAIMS, BECAUSE MARTINEZ IS NO LONGER IN CUSTODY.

Martinez seeks damages, because he claims his probationary period of thirteen years violated his constitutional rights.   See July Complaint ¶ 1, at 4.   Martinez states that he attempted to challenge his probationary period during his time in custody through a habeas corpus petition. See July Complaint ¶ 3, at 2.   Consequently, the Court must first consider whether Martinez is barred from challenging the constitutionality of his probationary period under Heck.   Under Heck, a plaintiff is barred from bringing claims under § 1983 "to recover damages for an unconstitutional conviction or imprisonment"  unless he or she "prove[s] that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by an authorized state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus."   Reid v. Pautler, 36 F. Supp. 3d 1067, 1117 (D.N.M. 2014)(Browning, J.)(quoting Crow v. Penry, 102 F.3d 1086, 1087 (10th Cir. 1996)(per curiam)(citing Heck, 512 U.S. at 487))).   While the Tenth Circuit has applied this bar "to proceedings that call into question the fact or duration of parole or probation," Crow v. Penry, 102 F. 3d at 1087, the plaintiff in Crow v. Penry was still on parole, and therefore was still in custody for the purposes of habeas corpus petitions.   Crow v. Penry, 102 F. 3d at 1087.   The Courts of Appeals are split on whether a § 1983 petitioner who is no longer in custody needs to meet Heck's "favorable-termination requirement" "when the plaintiff lacks an available habeas remedy."   Cohen v. Longshore, 621 F.3d 1311, 1315 (10th Cir. 2010).   The Tenth Circuit concluded that a petitioner who is no longer incarcerated need not meet the favorable-termination requirement:

> [I]n light of the fact that Heck involved a petitioner who was still incarcerated, we
> are not persuaded that Heck must be applied to petitioners without a habeas remedy.

We are instead persuaded by the reasoning of the Second, Fourth, Sixth, Seventh, Ninth, and Eleventh Circuits that we are free to follow the five-Justice plurality's approach in <u>Spencer</u> on this unsettled question of law.   We are also persuaded that the <u>Spencer</u> plurality approach is both more just and more in accordance with the purpose of § 1983 than the approach of those circuits that strictly apply <u>Heck</u> even to petitioners who have been released from custody.   If a petitioner is unable to obtain habeas relief -- at least where this inability is not due to the petitioner's own lack of diligence -- it would be unjust to place his claim for relief beyond the scope of § 1983 where "exactly the same claim could be redressed if brought by a former prisoner who had succeeded in cutting his custody short through habeas."

<u>Cohen v. Longshore</u>, 621 F.3d 1311, 1316-17 (10th Cir. 2010)(quoting <u>Spencer v. Kemna</u>, 523 U.S. 1, 21 (1998)(Souter, J., concurring)).   Because Martinez is no longer in custody, he is not able to bring a habeas corpus petition, and so, <u>Heck</u> does not bar Martinez from bringing his § 1983 claim.   See <u>Cohen v. Longshore</u>, 621 F.3d at 17.

Martinez has brought several habeas petitions in the past, however, and states in his July Complaint that he "filed his habeas petition in the sentencing court," after which,

Jamshid Askar, Sr., from the Habeas Corpus Unit was appointed to represent him and, during said representation spoke with Roberta Cohen (defendant named herein), appointed by the Governor, and spoke with her regarding Plaintiff's situation and, counsel was advised that the Parole Board considered Martinez to be on parole for the rest of his life.

July Complaint ¶ 3, at 2.   Martinez' July Complaint does not describe, however, when this habeas petition was filed, what the petition alleged, or whether it was decided on its merits.

In <u>Martinez v. Murray</u>, No. CIV 02-0175 MCA/RHS, 2004 U.S. Dist. LEXIS 34769 at *2 (D.N.M. Feb. 13, 2004)(Scott, J.), Martinez raised claims similar to this case's claims: "Plaintiff argues that the New Mexico Probation and Parole Act, N.M. Stat. Ann. §§ 31-21-3 to 19 creates an entitlement to determinate parole and that his parole term should therefore have ended before he was found in violation of his parole and re-incarcerated."   <u>Martinez v. Murray</u>, 2004 U.S. Dist.

LEXIS 34769, at *2.   Before dismissing the case on Eleventh Amendment[6] sovereign immunity

grounds, the Honorable Robert Scott, United States Magistrate Judge for the United States District

Court for the District of New Mexico, concluded that the Supreme Court of New Mexico's decision

in Quintana v. New Mexico Dept. of Corrections, 1983-NMSC-066, 100 N.M. 224, 668 P.2d 1101

("Quintana"), foreclosed Martinez' argument, because "N.M. Stat. Ann. § 31-21-10 (determinate

sentencing) applies only to persons (unlike Plaintiff) whose crimes were committed on or after

February 22, 1980."   Martinez v. Murray, 2004 U.S. Dist. LEXIS 34769, at *4-5 (citing Quintana,

1983-NMSC-066, ¶¶ 11-13, 100 N.M. at 226-27, 668 P.2d at 1103-04).   Judge Scott did not

address the fact that the two-year determinate-parole provision currently codified at § 31-21-10(D)

comes from 1977 N.M. Laws ch. 216 § 12(C) and was previously codified at § 41-17-24(C) -- the

statute that Martinez cites.   See 1977 N.M. Laws ch. 216(C).   The question, then, is not whether

the current statute's two-year determinate parole provision -- which was enacted in 1980 -- governs

Martinez' parole, but whether the two-year determinate parole provision -- which is its predecessor

-- was applicable law at the time Martinez committed his crime.

## II.   1977 N.M. LAWS CH. 216 APPLIED WHEN MARTINEZ COMMITTED HIS CRIME.

The Supreme Court of New Mexico held in Quintana that "[p]arole for inmates who

committed crimes between July 1, 1979 and February 22, 1980, are governed by the provisions of

Chapter 216."   Quintana, 1983-NMSC-066, ¶ 12, 100 N.M. at 227, 668 P.2d at 1104 (citing 1977

N.M. Laws Ch. 216 § 12).   Chapter 216 § 12(B) of New Mexico's 1977 Laws provides for

indeterminate parole -- a five-year minimum -- for inmates convicted of capital felonies, while

§ 12(C) provides determinate parole for inmates convicted of non-capital offenses:

---

[6]U.S. Const. amend. XI.

B.      Unless the board finds that it is in the best interest of society and parolee to reduce the period of parole, a person who was convicted of a capital felony shall be required to undergo a minimum period of parole of five years.   During the period of parole, the person shall be under the guidance and supervision of the board.

C.      An inmate who was convicted of a non-capital felony and who has served the sentence of imprisonment imposed by the court, shall be required to undergo a two-year period of parole.   During the period of parole, the person shall be under the guidance and supervision of the board.

1977 N.M. Laws, ch. 216 § 12.

At issue in Quintana is the length of time before two prisoners who are serving life sentences are eligible for parole, rather than the length of the prisoners' parole.   Quintana, 1983-NMSC-066, ¶ 2, 100 N.M. at 225, 668 P.2d at 1102.   The Supreme Court of New Mexico examines four laws to determine whether the prisoners are eligible for parole after ten or thirty years: (i) 1955 N.M. Laws, ch. 232 ("1955 law"), which provides that prisoners serving a life sentence are eligible for parole after ten years; (ii) 1977 N.M. Laws ch. 216 ("Chapter 216"), which became effective on July 1, 1979 and repeals the 1955 law, and provides that prisoners serving a life sentence become eligible for parole after thirty years; (iii) 1977 N.M. Laws ch. 217 ("Chapter 217"), which was passed on the same day as Chapter 216 and provides that prisoners serving a life sentence were eligible for parole after ten years, and amends the 1955 law -- it did not have an effective date but became effective automatically ninety days after the close of the 1977 session, in June 1977; and (iv) 1980 N.M. Laws, ch. 28, Section 1 ("1980 law"), which requires prisoners convicted of capital offenses and serving life sentences serve a minimum of thirty years before being eligible for parole -- the 1980 law applies to all persons sentenced to crimes committed on or after July 1, 1979, but who have not been placed on or become eligible for parole by February 22, 1980, the law's effective date.   See Quintana, 1983-NMSC-066 ¶¶ 6-9, 100 N.M. at 226, 668 P.2d at 1103 (citing 1955 N.M. Laws, ch. 232; 1977 N.M. Laws, ch. 216; 1977 N.M. Laws, ch.

217; 1980 N.M. Laws, ch. 28).   The Supreme Court of New Mexico gives effect to Chapter 216,

rather than Chapter 217, for this period of time, reasoning that

> the Legislature intended Chapter 216 to apply to persons sentenced for crimes
> committed after July 1, 1979, because Chapter 216 repealed the 1955 law whereas
> Chapter 217, approved after Chapter 216, only amended the 1955 law.   It is not
> logical for the Legislature to repeal the law and then amend it.

Quintana, 1983-NMSC-066 ¶ 11, 100 N.M. at 226, 668 P.2d at 1103.   The Supreme Court of New

Mexico concludes that:

> Chapter 217, which had exactly the same parole eligibility as the 1955 law, applies
> to all inmates whose crimes were committed prior to July 1, 1979.   Parole for
> inmates who committed crimes between July 1, 1979, and February 22, 1980, are
> governed by the provisions of Chapter 216.   Parole for inmates who committed
> crimes on or after February 22, 1980, are governed by the 1980 law.

Quintana, 1983-NMSC-066 ¶ 12, 100 N.M. at 227, 668 P.2d at 1104.

If Quintana's holding is still good law, it would mean that Chapter 216 § 12 would govern

Martinez' parole terms, which provides for an indeterminate minimum of five years' parole for

capital felons, and a determinate parole length of two years for non-capital felons.   See 1977 N.M.

Laws ch. 216 § 12(B) and (C).   Subsequent cases have, however, complicated the picture.   In

1989, the Tenth Circuit in Devine v. New Mexico Department of Corrections, 866 F.2d 339 (10th

Cir. 1989)("Devine"), criticized Quintana's parole-eligibility holding as a violation of the due

process clause,[7] because Chapter 216 § 12(A) retroactively enhanced the petitioner's punishment

by extending parole eligibility from ten to thirty years.   Devine, 866 F.2d at 339, 346.   The

Devine court also concluded that Chapter 217 -- and not Chapter 216 -- is operative for prisoners

whose crimes were committed between July 1, 1979, and February 22, 1980, because the Tenth

Circuit speculated that the Governor of New Mexico signed Chapter 217 into law after Chapter

---

[7]U.S. Const. amend. V.

216.  See Devine, 866 F.2d at 345.   Returning to the issue in 2013, the Supreme Court of New Mexico notably did not adopt the Tenth Circuit's holding in Devine that Chapter 217 was operative during that period, but instead only "expressly overrule[d] Quintana to the extent it is inconsistent with Devine."   Skidgel v. Hatch, 2013-NMSC-019, ¶ 16, 301 P.3d 854, 856-857 ("Skidgel").

The question remains, then, whether Quintana is still good law for the purpose of determining the length of -- as opposed to the timing of eligibility for -- parole for prisoners who committed a crime between July 1, 1979, and February 22, 1980.   The Supreme Court of New Mexico warns in dicta that "Quintana retains little, if any, precedential value," but did not explain what little precedential value Quintana still may have.   Skidgel, 2013-NMSC-019, ¶ 16, 301 P.3d at 856.   The Court concludes that, because Devine contradicted Quintana only to the extent that, by making Chapter 216 § 12(A) operative, Quintana retroactively enhanced the punishment of prisoners by extending the length of time before their parole eligibility, see Devine, F.2d at 339, 346, what remains of Quintana is its holding that Chapter 216 § 12's other provisions -- which do not cause due process violations according to the Tenth Circuit -- apply to felons whose crimes were committed between July 1, 1979, and February 22, 1980.

The next question is whether either Chapter 216 § 12(C)'s two-year determinate parole provision for non-capital felons or Chapter 216 § 12(B)'s five-year indeterminate minimum parole provision for capital felons violates the due process clause, because it is a retroactive punishment enhancement, such that Skidgel forbids its application, in addition to Chapter 216 § 12(A)'s thirty-year parole eligibility clause.   While Chapter 216 § 12(A) imposes an additional twenty-year period before a felon sentenced to life in prison is eligible for parole, applying Chapter 216 § 12(B) or § 12(C)'s parole-length provisions does not create an equivalent punishment enhancement, because Chapter 217 § 3 is silent on the length of parole.   Under Chapter 217 § 3, "[e]very

prisoner while on parole shall remain in the legal custody of the institution from which he was released but shall be subject to the orders of the board," 1977 N.M. Laws ch. 217 § 3(D), and "[t]he board may adopt such other rules not inconsistent with law as it may deem proper or necessary, with respect to . . . conditions to be imposed on parolees," 1977 N.M. Laws ch. 217 § 3(D)(7).

Because Chapter 217 § 3, as well as the prior 1955 law, is silent on the parole's length, and leaves the parole's length to the Parole Board's discretion, the Court cannot determine whether Martinez would have been given a longer term of parole under Chapter 216 § 12 than under Chapter 217 § 3.   It is possible that Chapter 216 § 12(C)'s two-year determinate parole provision for non-capital felons may have limited the length of Martinez' parole from what a parole board in its discretion may have awarded under Chapter 217 § 3.   The Court determines, however, that Martinez is a capital felon, see § III, infra, and Martinez' parole length under Chapter 216 § 12(B) was a minimum of five years.   While it is possible that Chapter 216(B)'s five-year indeterminate minimum parole provision for capital felons extended rather than reduced the length of Martinez' parole from that which a parole board may have awarded under Chapter 217 § 3, this hypothetical enhancement -- even if it could be proven -- does not stem from the legislature's enactment of an ex post facto law, nor from the courts as a retroactive punishment enhancement, as in Quintana. See Devine, F.2d at 347 ("Because the decision of the New Mexico Supreme Court [in Quintana] was unforeseeable and retroactively enhanced Devine's punishment, it violated the due process clause.").   Rather, any hypothetical disparity would result from the parole board's discretion.

Under both Chapter 217 § 3 and Chapter 216 § 12(B), the discharge date from parole for a capital felon is set at the Parole Board's discretion; consequently, the exercise of this discretion is neither an ex post facto law, nor an unforeseeable and retroactive punishment enhancement. Accordingly, the Court cannot conclude that Quintana's holding violates Martinez' due process

rights.   With no constitutional violation, <u>Devine</u> does not contradict <u>Quintana</u>'s precedent on this issue, and <u>Skidgel,</u> therefore, does not overrule <u>Quintana</u>.   <u>Quintana</u>'s holding that Chapter 216 § 12 applies to offenses committed between July 1, 1979, and February 22, 1980, therefore, is still good law.   The Court concludes that Chapter 216 § 12(B) and (C)'s parole length provisions are applicable to prisoners whose crimes, like Martinez,' were committed between July 1, 1979, and February 22, 1980.

### III.   AS AN INMATE CONVICTED OF A CAPITAL FELONY, MARTINEZ WAS NOT ELIGIBLE FOR THE TWO-YEAR DETERMINATE PAROLE PERIOD UNDER CHAPTER 216 § 12(C), BUT WAS REQUIRED TO UNDERGO A MINIMUM PERIOD OF FIVE YEARS ON PAROLE.

Martinez does not describe the offense for which he was sentenced.   <u>See</u> January Complaint; July Complaint.   The Supreme Court of New Mexico, in ruling on Martinez' appeal from a denial of an earlier petition, states that "Martinez is serving a life term for first-degree murder in the state penitentiary."   <u>Martinez v. State</u>, 1989-NMSC-026, ¶ 1, 108 N.M. 382, 383, 772 P.2d 1305, 1305.   As a felon serving a life sentence for first-degree murder, Martinez is a capital felon, as the New Mexico Legislature defines the term.   <u>See</u> N.M.S.A. § 31-18-14 ("When a defendant has been convicted of a capital felony, the defendant shall be sentenced to life imprisonment or life imprisonment without possibility of release or parole.").   Accordingly, Chapter 216 § 12(B) determines Martinez' parole length:

> Unless the board finds that it is in the best interest of society and parolee to reduce the period of parole, a person who was convicted of a capital felony shall be required to undergo a minimum period of parole of five years.   During the period of parole, the person shall be under the guidance and supervision of the board.

1977 Laws ch. 216(B).   The 1980 law slightly amended this provision, and Chapter 216 § 12(B) is currently codified as follows:

> Unless the board finds that it is in the best interest of society and the parolee to

> reduce the period of parole, a person who was sentenced to life imprisonment shall
> be required to undergo a minimum period of parole of five years. During the period
> of parole, the person shall be under the guidance and supervision of the board.

NMSA § 31-21-10(B).   Under this provision, Martinez' probation length is indeterminate -- the statute provides for a "minimum" length of five years for parole, and does not contain the determinate language of the two-year provision in Chapter 216 § 12(C) or NMSA § 31-21-10(D). NMSA § 31-21-10(B).   Because the applicable statute does not limit his parole's length to two or even five years, on this ground only, Martinez does not state a claim that his thirteen-year parole period violates State law.

## IV.   MARTINEZ DOES NOT STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

Martinez seeks relief under 42 U.S.C. § 1983 for alleged violations of the Eighth, Eleventh, Thirteenth and Fourteenth Amendments to the United States Constitution.   See July Complaint at 3.   Martinez does not plead sufficient facts to make his constitutional claims plausible on their face.   See Fed. R. Civ. P. 12(b)(6); Twombly, 550 U.S. at 570.   The Court construes pro se pleadings liberally and so does not hold Martinez' "failure to cite proper legal authority" against him.   Hall v. Bellmon, 935 F.2d at 1110.   The Court construes Martinez' July Complaint as a § 1983 action.   A plaintiff asserting a § 1983 claim "must establish . . . a violation of rights protected by the federal Constitution or created by federal statute or regulation."   Schaefer v. Las Cruces Pub. Sch. Dist., 716 F. Supp. 2d at 1063 (quoting Martinez v. Martinez, No. CIV 09-0281 JB/KBM, 2010 WL 1608884, at *11).   The Court determines that, although Martinez cites to an earlier version of the two-year determinate parole provision, see July Complaint ¶ 3, at 3 (citing N.M.S.A. § 41-17-24), and erroneously refers to it as an "indeterminate law[]," these errors are not fatal to his claims.   Construing Martinez' pleadings liberally, the Court determines that

Martinez contends that either Chapter 216 § 12(C), or N.M.S.A. § 31-21-10(D)'s two-year determinate parole provision applies to him.   Nevertheless, because the Court concludes that Martinez is a capital felon, neither Chapter 216 § 12(C) nor N.M.S.A. § 31-21-10(D) apply to him. See Section III, supra.   Rather, for the reasons that the Court discusses in Sections II and III, supra, Chapter 216 § 12(B), or its current equivalent, N.M.S.A. § 31-21-10(B), govern Martinez' parole. Martinez was on parole from December 21, 2006, see July Complaint ¶ 2, at 2, to January 18, 2019, see January Complaint at 2.   Given that, under applicable law, Martinez is to undergo a "minimum period of parole of five years," Martinez does not state facts to show his thirteen-year period of parole violated his constitutional rights.   1977 N.M. Laws ch. 216 § 12(B); N.M.S.A. § 31-21-10(B).   To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must assert that State officials acting under color of state law have committed acts that result in a deprivation of rights that the Constitution of the United States of America or federal law secure.   See 42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48 (1988).   A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."   Twombly, 550 U.S. at 570.   Under rule 12(b)(6), the Court must accept all well-pled factual allegations, but not conclusory, unsupported allegations, and may not consider matters outside the pleading.   See Twombly, 550 U.S. at 555; Dunn v. White, 880 F.2d 1188, 1190 (10th Cir. 1989).   Martinez alleges that the named defendants

> caus[ed] Martinez to suffer cruel and unusual punishment by ignoring his repeated requests for mandatory discharge of parole of which said same has been granted to others in his situation being denied equal protection and further constituting cruel and unusual punishment and involuntary servitude: basically, Martinez suffered sufficient illegal and outright incarceration, whether it be on parole, which was is illegal as he was supposed to be mandatorily discharged from his parole period after serving two years pursuant to the mandatory language ("shall") contained in New Mexico Laws and further mandated by the Rules of Construction of New Mexico of which defendants failed, neglected and refused to follow in their prestigious position of office, supposedly to set a positive example to their constituents but failed to do so by their negligence to follow the laws.

July Complaint ¶ 1, at 4.   On the facts before the Court, the Court concludes that Martinez does not plausibly allege that a thirteen-year period of parole violates his rights under the Eighth, Eleventh, Thirteenth or Fourteenth Amendments to the Constitution, or violates Chapter 216 § 12(B), N.M.S.A. § 31-21-10(B).   The Court, therefore, will dismiss this case without prejudice for failure to state a claim upon which relief can be granted.   See 28 U.S.C. § 1915(e)(2)(B)(ii)("[T]he court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted.").

IT IS ORDERED that: (i) this case is dismissed without prejudice; (ii) and Final Judgment will be entered.

_____
UNITED STATES DISTRICT JUDGE

*Parties*:

Richard Ralph Martinez
New York City, New York

*Plaintiff pro se*

- 28 -